(Republished)

■ RICHARD BULLION et al., Plaintiffs, v METROPOLITAN TRANSPORTATION AUTHORITY, Appellant, et al., Defendants.— Judgment of the Supreme Court, New York County (Francis Pecora, J.), entered on December 22, 1988, which dismissed the third-party action against defendant Jopel Construction and Trucking Company, Inc. and the cross claims interposed by third-party defendant Schiavone Construction Company, Inc. against Jopel Construction and Trucking Company, Inc., is unanimously reversed on the law, the third-party action against Jopel Construction and Trucking Company, Inc. reinstated and the matter remanded for trial in accordance with this memorandum opinion, without costs or disbursements.

Plaintiff Richard Bullion, an electrician employed by Schiavone Construction Company, Inc. and working on the construction of the 63rd Street Tunnel in Manhattan, was injured on June 25, 1980 while riding on a mucktram. At the time of the accident, he was engaged in checking junction boxes in the tunnel. Thereafter, he commenced a personal injury action against defendants Metropolitan Transportation Authority, the City of New York, the New York City Transit Authority, and others, and the matter eventually came to trial. However, prior to submission to the jury, the municipal defendants settled with plaintiff. In the meantime, the trial court dismissed their third-party action against Jopel Construction and Trucking Company, Inc., a subcontractor of Schiavone, on the ground that there was no indication of any negligence on Jopel's part or that its activities were in any manner connected to the accident in question. On appeal, the only issue involves Jopel's liability under the indemnity agreement entered into between Schiavone and Jopel, which also named as an indemnitee the owner of the tunnel—that is, the City of New York through the New York City Transit Authority. Pursuant to paragraph 16 (b) of the subject contract: "All claims for damages, death or injury to or by any person (including Subcontractors' employees * * *): (1) which any provision of the Principal Contract or any statute, ordinance or regulation makes Contractor liable for such damages or injuries to persons or property, whether or not claimed to

result from (or resulting from) or claimed to arise out of (or arising out of) Contractor's or Owner's negligence (whether active or passive), act, omission or fault: (2) deemed to result from or arise out of any negligence, act, omission or fault on the part of the Subcontractors in connection with this Subcontract, the prosecution of work, or in connection therewith: and (3) resulting from the performance of Work or resulting to Work from whatever cause, including acts or omissions and supervisory acts of Contractor or Owner."

The question of whether Ruben Ezquiardo, the driver of the tram, was working for Schiavone or Jopel at the time of the incident should have properly been presented to the jury, and indeed, the proof concerning this matter was ambiguous. Accordingly, the trial court was simply unwarranted in determining that Jopel's conduct was entirely unrelated to the accident. However, the indemnity clause does not contain any language that would require that the accident have occurred during the performance of Jopel's work. Instead, it merely refers to claims "resulting from the performance of Work or resulting to Work from whatever cause, including acts or omissions and supervisory acts of Contractor or Owner." Therefore, the only basis for avoiding operation of the indemnification provision is under former section 5-322.1 of the General Obligations Law which, at the time that the subject contract was executed, rendered such a clause unenforceable only to the extent that it purported to indemnify an owner or contractor against liability caused by its sole negligence *(Quevedo v City of New York,* 56 NY2d 150, 156). As the Court of Appeals observed in *Quevedo v City of New York (supra,* at 156), "[i]n contrast to the amended section, nothing in former section 5-322.1 suggests that agreements providing for indemnification against the promisee's negligence in cases of joint fault are to be considered unenforceable".

In that regard, the municipal defendants argue disingenuously that since this case was settled before it was submitted to the jury, and there was, thus, no finding of negligence against anyone, they should be accorded indemnification under the agreement as a matter of law. They are incorrect. Jopel is certainly entitled to have the issue of negligence litigated so that it can attempt to establish the city's sole responsibility for the accident *(see, Walsh v Morse Diesel,* 143 AD2d 653). Moreover, if the jury decides that the city was not solely at fault and that, therefore, the indemnification provision applies, Jopel should have an opportunity to challenge

the reasonableness of a settlement for which it would ultimately be compelled to pay. Jopel, not having participated at all in making the agreement and not having stipulated to it, should not simply be required to indemnify the city for the full amount regardless of whether the settlement was appropriate or not. Consequently, the instant matter should be remanded for trial to determine negligence and whether the settlement reasonably compensated plaintiff for his damages.

The decision and order of this court entered herein on November 13, 1990, is hereby recalled and vacated. [See, 167 AD2d 186.] Concur—Sullivan, J. P., Carro, Milonas, Smith and Rubin, JJ.