■ CLEAN EARTH OF NORTH JERSEY, INC., Appellant, v NORTHCOAST MAINTENANCE CORP., Doing Business as J. BARWICK LANDSCAPE & SITE DEVELOPER, et al., Respondents, et al., Defendants. [39 NYS3d 165]—

In an action, inter alia, to recover damages for breach of contract, on an account stated, and on a payment bond, the plaintiff appeals, as limited by its brief, from (1) so much of an order of the Supreme Court, Nassau County (Jaeger, J.), dated August 21, 2013, as denied those branches of its motion which were for summary judgment on the causes of action to recover damages for breach of contract, on an account stated, and on the payment bond, and (2) so much of an order of the same court entered January 8, 2014, as granted the motion of the defendant Colonial Surety Company for leave to reargue its opposition to that branch of the plaintiff's motion which was for summary judgment on the cause of action to recover on the payment bond and, thereupon, deemed its opposition to be a cross application for summary judgment dismissing the complaint insofar as asserted against it and granted the cross application.

Ordered that the appeal from so much of the order dated August 21, 2013, as denied that branch of the plaintiff's motion which was for summary judgment on the cause of action to recover on the payment bond is dismissed, as that portion of the order was superseded by the order entered January 8, 2014; and it is further,

Ordered that the order dated August 21, 2013, is affirmed insofar as reviewed; and it is further,

Ordered that the order entered January 8, 2014, is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant Colonial Surety Company, payable by the plaintiff.

The defendant Northcoast Maintenance Corp., doing business as J. Barwick Landscape & Site Developer (hereinafter Barwick), is an excavation contractor. On February 2, 2010, Barwick obtained a payment bond, issued pursuant to State Finance Law § 137, from the defendant Colonial Surety Company (hereinafter Colonial) in connection with an impending public improvement contract with the defendant New York State Department of Environmental Conservation (hereinafter the DEC). Pursuant to that contract, which was entered into between Barwick and the DEC on March 31, 2010, Barwick agreed to act as general contractor for the excavation and remediation of hazardous soils on a project known as the Fumex Sanitation Site in Nassau County.

On November 23, 2010, a representative of the plaintiff,

Clean Earth of North Jersey, Inc., executed an "Environmental Services Agreement" between the plaintiff and Barwick; however, this agreement was not signed by Barwick's representative. On November 24, 2010, a Barwick corporate officer completed and signed a "Credit Application" seeking credit from the plaintiff. Other than these documents, there is no evidence that a formal contract was ever executed between the plaintiff and Barwick. Nevertheless, the plaintiff supplied equipment and removed contaminated landfill from the project site.

By invoice dated December 13, 2010, the plaintiff informed Barwick that it owed $74,890.72 for certain work performed by the plaintiff on December 8, 2010, at the project site. Two other invoices from the plaintiff, both dated December 14, 2010, stated that Barwick owed, respectively, $124,332.46 for work performed on December 9, 2010, and $16,869.04 for work performed on December 10, 2010, at the project site. The invoices, which sought a total amount of $216,092.22, indicated that payment was due in "Net 30 Days," on January 12 and 13, 2011, respectively. Barwick did not remit any payment.

On June 7, 2011, the plaintiff submitted to Colonial a proof of claim form in connection with the plaintiff's request for payment under the payment bond. This form stated that the plaintiff's last work on the project was on December 10, 2010. The form also increased the total amount of the claimed payment due to $232,120.49, which included $16,028.27 in "accrued late charges" in addition to the original amount of $216,092.22 for the work performed. On July 28, 2011, Colonial notified the plaintiff that Barwick was disputing the plaintiff's claim. On August 11, 2011, the DEC accepted the project as completed.

In June 2012, the plaintiff commenced this action seeking, among other things, to recover damages for breach of contract, on an account stated, and on the payment bond. The plaintiff alleged that it was not compensated for work it performed on the public improvement project pursuant to an agreement with Barwick. Thereafter, the plaintiff moved, among other things, for summary judgment on the causes of action to recover damages for breach of contract, on an account stated, and on the payment bond. The Supreme Court denied those branches of the motion. Subsequently, the court granted Colonial's motion for leave to reargue its opposition to that branch of the plaintiff's motion which was for summary judgment on the cause of action to recover on the payment bond and, thereupon, deemed Colonial's opposition to be a cross application for sum-

mary judgment dismissing the complaint insofar as asserted against it as time-barred and granted the cross application. The plaintiff appeals.

The Supreme Court properly denied that branch of the plaintiff's motion which was for summary judgment on the cause of action to recover damages for breach of contract. The plaintiff's submissions in support of its motion failed to establish, prima facie, that the plaintiff and Barwick entered into a binding agreement regarding the plaintiff's work on the project (*see Sunbelt Rentals, Inc. v New York Renaissance*, 126 AD3d 481, 481 [2015]; *Priceless Custom Homes, Inc. v O'Neill*, 104 AD3d 664, 665 [2013]; *see also M.V.B. Collision, Inc. v Rovt*, 101 AD3d 830, 832 [2012]; *Power Cooling Inc. v Churchill School & Ctr.*, 17 AD3d 148, 148 [2005]). Since the plaintiff failed to meet its initial burden, it is not necessary to consider the sufficiency of the papers submitted in opposition (*see Tingling v C.I.N.H.R., Inc.*, 120 AD3d 570, 571 [2014]).

The Supreme Court also properly denied that branch of the plaintiff's motion which was for summary judgment on the cause of action to recover on an account stated. "An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due" (*Branch Servs., Inc. v Cooper*, 102 AD3d 645, 646 [2013] [internal quotation marks omitted]; *see BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp.*, 89 AD3d 883, 884 [2011]). "An agreement may be implied where a defendant retains bills without objecting to them within a reasonable period of time or makes partial payment on the account" (*Branch Servs., Inc. v Cooper*, 102 AD3d at 646 [internal quotation marks omitted]). In opposition to the plaintiff's prima facie showing (*see Law Offs. of David J. Sutton, P.C. v NYC Hallways & Lobbies, Inc.*, 105 AD3d 1010, 1010-1011 [2013]; *Castle Oil Corp. v Bokhari*, 52 AD3d 762, 762 [2008]), Barwick's submissions, which included an affidavit of its president and emails exchanged by the parties, raised a triable issue of fact as to whether Barwick objected to the plaintiff's invoices within a reasonable period of time (*see Granite State Ins. Co. v Transatlantic Reins. Co.*, 132 AD3d 479, 483-484 [2015]; *cf. Darby & Darby v VSI Intl.*, 95 NY2d 308, 315 [2000]).

Moreover, upon reargument, the Supreme Court properly granted Colonial's cross application for summary judgment dismissing the complaint insofar as asserted against it as time-barred. The sole cause of action asserted against Colonial was to recover on the payment bond issued pursuant to State

Finance Law § 137. Colonial demonstrated, prima facie, that the action was commenced after the expiration of the statute of limitations applicable to that cause of action. When the bond was issued in February 2010, State Finance Law § 137 (4) (b) provided that "no action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which final payment under the claimant's subcontract became due" (former State Finance Law § 137 [4] [b]; *see Windsor Metal Fabrications v General Acc. Ins. Co. of Am.*, 94 NY2d 124, 130 [1999]). In *Windsor Metal,* the Court of Appeals held that "the one-year limitations period begins to run . . . when a subcontractor who has directly contracted with the general contractor has submitted an invoice for final payment . . . and 90 days have passed since the subcontractor has ceased to work on the project. Contractual provisions between the subcontractor and general contractor cannot modify this starting-point date" (*Windsor Metal Fabrications v General Acc. Ins. Co. of Am.*, 94 NY2d at 131). It is undisputed that under the version of State Finance Law § 137 (4) (b) in effect when Colonial's bond was issued, the statute of limitations for the plaintiff's bond claim started to run on March 11, 2011, and expired one year later, on March 11, 2012, before the plaintiff commenced this action in June 2012.

However, on August 3, 2011, the legislature amended State Finance Law § 137 (4) (b) to provide that "no action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which the public improvement has been completed and accepted by the public owner." The amendment was to "take effect immediately" (L 2011, ch 380, § 2; *see* L 2011, ch 380, § 1). The amendment was passed to correct ambiguities in State Finance Law § 137 (4) (b) brought to light by the Court of Appeals' decision in *Windsor Metal* (*see* Senate Mem in Support of L 2011, ch 380, 2011 McKinney's Session Laws of NY at 2018-2019), which "caused considerable confusion in the construction industry" (Senate Sponsor's Letter in Support, Bill Jacket, L 2011, ch 380 at 5). The plaintiff argues that the amendment should be given limited retroactive effect and be applied to its cause of action, which accrued prior to the effective date of the amendment but was not barred by the pre-amendment statute of limitations when the amendment became effective. It is undisputed that the plaintiff's cause of action would be timely under the amended statute.

" 'In determining whether statutory enactments should be

given retroactive effect, there are two axioms of statutory interpretation' " (*Marrero v Crystal Nails*, 114 AD3d 101, 111 [2013], quoting *Nelson v HSBC Bank USA*, 87 AD3d 995, 997 [2011]). " 'Amendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated. However, remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose' " (*Nelson v HSBC Bank USA*, 87 AD3d at 997, quoting *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117, 122 [2001]; *see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584 [1998]; *Marrero v Crystal Nails*, 114 AD3d at 111). " 'These axioms are helpful guideposts, but 'the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal' " (*Nelson v HSBC Bank USA*, 87 AD3d at 997, quoting *Matter of OnBank & Trust Co.*, 90 NY2d 725, 730 [1997]; *see Matter of Marino S.*, 100 NY2d 361, 371 [2003]; *Marrero v Crystal Nails*, 114 AD3d at 112).

Here, the legislature did not explicitly state or clearly indicate, either in the amendment itself or in the legislative materials, that the 2011 amendment should be applied retroactively (*see* L 2011, ch 380, §§ 1, 2; Bill Jacket, L 2011, ch 380). Thus, "we presume at the outset that the amendment was to have prospective application" (*Marrero v Crystal Nails*, 114 AD3d at 112). Additionally, the 2011 amendment did not create a new right or a new class of individuals who could assert a cause of action under a payment bond. Instead, the amendment was simply intended to clarify the limitations period for bringing a payment bond claim. Given these circumstances, the amendment cannot be characterized as remedial, and need not be applied retroactively to achieve its purpose (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d at 584; *Matter of Cady v County of Broome*, 87 AD2d 964, 965 [1982]).

Finally, we note that a surety bond is a contract under New York law (*see Walter Concrete Constr. Corp. v Lederle Labs.*, 99 NY2d 603, 605 [2003]; *WBP Cent. Assoc., LLC v DeCola*, 91 AD3d 861, 862 [2012]), and "a contract generally incorporates the state of the law in existence at the time of its formation" (*Travelers Indem. Co. v Orange & Rockland Utils., Inc.*, 73 AD3d 576, 577 [2010]; *see Pioneer Transp. Corp. v Kaladjian*, 105 AD2d 698 [1984]). Accordingly, taking into consideration all of the relevant factors, we conclude that the subject amendment applies only prospectively to payment bonds issued pursuant to State Finance Law § 137 after the amendment's

effective date (*see Marrero v Crystal Nails*, 114 AD3d at 113; *Sapper v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 190 AD2d 549, 550-551 [1993]; *see also Char-Mo Invs. v Market Ins. Co.*, 44 NY2d 793 [1978]; *Matter of Schultz Constr. v Ross*, 76 AD2d 151, 154 [1980], *affd* 53 NY2d 792 [1981]).

Contrary to the plaintiff's further contention, it failed to raise a triable issue of fact as to whether Colonial should be equitably estopped from asserting a statute of limitations defense (*see Zumpano v Quinn*, 6 NY3d 666, 674 [2006]; *D.J. Rossetti, Inc. v Joseph Francese, Inc.*, 273 AD2d 781, 783 [2000]).

The plaintiff's remaining contentions either are improperly raised for the first time in its reply brief on appeal or need not be reached in light of our determination. Chambers, J.P., Austin, Sgroi and Duffy, JJ., concur.